IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 7 |
| CRAIG D. WINKLES<br>JENNIFER L. WINKLES, | |
| Debtor(s). | Case No. 10-30137 |

OPINION

This matter is before the Court on a motion filed by the United States Trustee ("Trustee") to dismiss this case under 11 U.S.C. §§ 707(b)(1) and (b)(2). The sole issue in this case is whether unemployment compensation benefits received from the State of Illinois prior to filing bankruptcy are "benefits received under the Social Security Act" and therefore excluded from the current monthly income calculation under 11 U.S.C. § 101(10A)(B).

The debtors, Craig and Jennifer Winkles, filed their Chapter 7 bankruptcy petition on January 21, 2010. According to debtors' schedules, Craig Winkles was unemployed for approximately one year prior to filing the instant bankruptcy petition. While his monthly income is listed as $0.00, Schedule I indicates that he was receiving unemployment compensation during the six-month period preceding the bankruptcy filing. On line 9 of Official Form B22A, commonly referred to as the "Means Test Form," the debtors claimed Craig's monthly unemployment compensation in the amount of $2,236.00 as a benefit under the Social Security Act, thereby excluding that amount from the current monthly income calculation. As a result of excluding his unemployment compensation, the debtors' annualized current monthly income fell

1

below the applicable median family income. Debtors were therefore not required to complete the remainder of Form B22A, and the presumption of abuse could not arise.

The Trustee filed a motion to dismiss the case under §§ 707(b)(1) and (b)(2) on the basis that unemployment compensation is not a benefit received under the Social Security Act. The Trustee prepared a separate Form B22A (attached as Exhibit A to the motion to dismiss) which includes the unemployment compensation and which uses "the best available information" to complete the remainder of the Form. Based on the calculations set forth therein, the Trustee argues that because the amount on line 51 (60-month disposable income under § 707(b)(2)) exceeds $10,950, the presumption of abuse arises and the case should be dismissed.

The parties have filed briefs in support of their respective positions. In debtors' brief, counsel asks the Court to adopt and incorporate by reference the briefs and legal arguments submitted by the debtors in *In re Treece*, Bk. No. 09-33290.[1]

Under § 101(10A) of the Bankruptcy Code, "current monthly income" means "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income…." 11 U.S.C. § 101(10A)(A). Current monthly income:

> (B) includes any amount paid by an entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), *but excludes benefits received under the Social Security Act….*

11 U.S.C. § 101(10A)(B) (emphasis added).

---

[1] The issue that is now before the Court was briefed and argued in a separate bankruptcy case, *In re Treece*, Bk. No. 09-33290. While the matter was still under advisement, the debtors in *Treece* moved to voluntarily dismiss their case.

The debtors contend that unemployment compensation benefits are "benefits received under the Social Security Act," and as such, are excluded from the current monthly income calculation. Relying on the reasoning set forth in *In re Munger*, 370 B.R. 21 (Bankr. D. Ma. 2007) and *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007), the debtors argue that Congress did not enumerate, in § 101(10A)(B), the specific benefits to be excluded and therefore, the statutory language "benefits received under the Social Security Act" should be interpreted to cover a broad range of benefits. The debtors further contend that although unemployment compensation is paid by the State of Illinois, in order to receive federal funding, the State's unemployment program must be maintained in accordance with various rules and regulatory provisions established by the Social Security Act. As such, unemployment benefits fall within "benefits received under the Social Security Act." Finally, the debtors argue that the statute's legislative history supports their position that unemployment compensation should be excluded from the current monthly income calculation.

The Trustee asserts that unemployment compensation is not a benefit received under the Social Security Act and must therefore be included in determining debtors' current monthly income. Citing *In re Kucharz*, 418 B.R. 635 (Bankr. C.D. Ill. 2009) and *In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008), the Trustee first argues that while the Social Security Act includes incentives for a state to create an unemployment compensation system, such a system is not *mandated* by the Act. If a state chooses to adopt such a program, the state administers the program and pays the benefits. Therefore, the Trustee argues, the benefits are received from the state and not "under the Social Security Act." In addition, the Trustee contends that the current monthly income calculation is used as a predictor of future income. Since unemployment compensation is based on historical earnings and is designed to provide a partial replacement for

3

the wages that would have been earned, including it in the current monthly income calculation more accurately predicts future income.

There is no dispute that unemployment compensation constitutes a "benefit." The question before the Court is whether that benefit is received "under the Social Security Act." The language of § 101(10A)(B) provides no clear answer, resulting in a split of authority among the courts that have addressed this issue. As explained by the court in *Baden*, it is unclear whether a "benefit received under the Social Security Act" was intended to be all-encompassing since there is no reference to a specific provision of the Act, or whether it was an alternative way of referring to social security benefits, which are distinguished from unemployment compensation in other provisions of the Act. *In re Baden*, 396 B.R. at 622. Since the statutory language is unclear, the Court must look beyond the plain language to interpret the statute. *Id*.

The Social Security Act did not mandate that the states adopt an unemployment compensation system. When the Act was passed, Congress rejected the idea of a uniform national unemployment insurance system, "preferring instead to preserve the autonomy of the states to adopt their own systems." *In re Kucharz*, 418 B.R. at 638 (citing *New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 541 n.36 (1979).[2] The Social Security Act, however, did provide financial incentives - primarily tax credits for employers and federal funds for operating costs - as a way of encouraging the states to implement and administer an unemployment compensation program. In order to receive this financial assistance, a state must meet certain minimum standards set forth in the Social Security Act and other federal laws.[3]

---

[2] In *Kucharz*, Judge Perkins explains the history of the Social Security Act as it relates to the state-administered unemployment compensation systems. *In re Kucharz*, 418 B.R. at 637-40.

[3] For example, to receive federal funds, a state's unemployment compensation law must substantially comply with the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301-3311(which originally appeared in Title IX of the Social

4

Beyond meeting those standards, the states are free to enact their own unemployment compensation legislation.

Illinois, for example, enacted the Unemployment Insurance Act, 820 ILCS 405/100-3200, and created the Illinois Department of Employment Security to administer the law. Unemployment insurance claims are evaluated by state officials in accordance with state law. The funds used to pay unemployment benefits are state funds "raised by employer contributions required by state law, paid as determined by state statutes and regulations, all as managed by a large state bureaucracy staffed by state officials and employees." *In re Kucharz*, 418 B.R. at 641. In short, although Illinois, like other states, receives funds from the federal government to help defray the costs of administering its unemployment compensation program, unemployment benefits are *provided for and paid by the State of Illinois*. Indeed, even if the Social Security Act was repealed, the Illinois Unemployment Insurance Act would remain in full force and effect. *In re Kucharz*, 418 B.R. at 639 n.3.

Thus, while there is a link between the Social Security Act and state unemployment compensation programs, that "link" is not sufficient to establish that unemployment benefits are paid *under* the Social Security Act. As explained by Judge Perkins in *Kucharz*:

> [T]he inquiry is more specific than whether there is merely an historical link between the SSA and unemployment compensation. Unemployment payments are excluded only if they are properly characterized as benefits received under the Social Security Act. It is not sufficient that the benefits are merely 'related to' or 'envisioned by' or 'induced by' the SSA. More is required. They must have been received *under* the SSA.

---

Security Act, but was later moved to the Internal Revenue Code), and with the statutory requirements set forth in the Social Security Act at 42 U.S.C. § 503(a).

5

*Id*. at 641.  In the context of § 101(10A)(B), the word "under" means "required by" or "in accordance with." *Id*., citing Webster's Third New International Dictionary of the English Language Unabridged (1976).  Nothing in the Social Security Act *requires* the states to enact an unemployment compensation program. Rather, unemployment benefits are paid under state programs and in accordance with state law. Thus, to categorize unemployment compensation as a benefit received under the Social Security Act "would be a strained interpretation … since unemployed individuals receive no benefits 'under the Social Security Act,' but only under the programs adopted by their states, which may provide benefits beyond those that are federally funded."  Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 247 (Spring 2005).

    Debtors argue that Congress did not enumerate, in § 101(10A)(B), the specific benefits to be excluded and therefore, the statutory language "benefits received under the Social Security Act" should be interpreted to cover a broad range of benefits. In support of this position, counsel compares other sections of the Bankruptcy Code where Congress referenced *specific* provisions of the Social Security Act.  Those sections include, among others, 11 U.S.C. §§ 362(b)(2)(F) & (G) and 11 U.S.C. § 704(c)(1)(A)(i).[4]  Counsel argues that when Congress wanted to limit the applicability of the Social Security Act, it did so by reference to specific sections.

---

[4] Section 362(b)(2)(F) and (G) provide that the filing of a petition does not operate as a stay "of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act  or under an analogous State law; or of the enforcement of a medical obligation, as specified under title IV of the Social Security Act."  11 U.S.C. §§ 362(b)(2)(F) & (G).

Section 704(c)(1)(A)(i) provides, in part, that  the trustee shall "provide written notice to the holder of the claim described in subsection (a)(10) of such claim and of the right of such holder to use the services of the State child support enforcement agency established under sections 464 and 466 of the Social Security Act…."  11 U.S.C. § 704(c)(1)(A)(i).

The debtors cite *Sorrell* and *Munger* in support of their argument.  In *Munger*, for example, the court examined the language of § 522(d)(10), which provides, in pertinent part, that a debtor may claim as exempt "a social security benefit, unemployment compensation, or a local public assistance benefit…." 11 U.S.C. § 522(d)(10)(A).  The court concluded that "[t]he way in which Congress chose to phrase the references … supports the view that '*a benefit received under the Social Security Act*' *in §101(10A)(B)* was purposefully intended to be broader than a '*social security benefit*' [and that] 'unemployment compensation' is included in this broader definition."  *In re Munger*, 370 B.R. at 25-26 (emphasis added).  The Court finds debtors' argument unpersuasive and respectfully disagrees with the reasoning in *Munger*.  To the contrary, this Court, like the court in *Baden*, "views the distinction between unemployment compensation and social security benefits [in § 522(d)(10)(A)] as a manifestation of Congress' intent that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government."  *In re Baden*, 396 B.R. at 621.

Debtors also argue that the legislative history of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and in particular of § 101(10A)(B), supports their position that unemployment compensation was intended to be excluded from the current monthly income calculation.  The Court finds the legislative history to be inconclusive and of little assistance in determining whether Congress intended that unemployment benefits be excluded from the calculation of current monthly income.

Early drafts of BAPCPA did not exclude social security benefits from current monthly income. Senator Edward Kennedy, when introducing the amendment in 1999 that would eventually become the basis for the exclusions listed in § 101(10A)(B), noted the financial

7

hardships faced by many senior citizens in America. He emphasized the importance of social security benefits for seniors, who are more likely to be dismissed from their jobs and who may have more difficulty gaining employment. 145 Cong. Rec. S14,678 (1999) (statement of Sen. Kennedy). Similarly, when the House began consideration of BAPCPA, Representative John Conyers moved for an amendment that would exclude benefits received under the Social Security Act from current monthly income. In his opening remarks, Representative Conyers stated:

> As the law currently stands, any senior is eligible for bankruptcy relief. The bill, however, would force millions of seniors living on fixed incomes into mandatory repayment plans. This is because there is no exclusion from the definition of "income" for payments received for Social Security, retirement, for disability insurance, for supplemental security income, or for unemployment insurance.

145 Cong. Rec. H2770 (1999) (statement of Rep. Conyers). Debtors cite Senator Kennedy's concerns for seniors and Representative Conyers' remarks as proof that "Congress specifically contemplated that 'benefits received under the Social Security Act' would include unemployment compensation." Debtors' Brief in Opposition to Motion to Compel at p. 15. The Court does not agree with debtors' conclusion. Senator Kennedy appeared to be concerned with protecting social security benefits received by senior citizens living on fixed incomes and not necessarily with unemployment benefits. Representative Conyers expressed the same concern. Although Representative Conyers' opening remarks included a reference to unemployment insurance, the Court does not believe that his remarks alone evidence a Congressional intent to exclude unemployment compensation from the current monthly income calculation.

While perhaps not determinative of the issue before the Court today, it is also important to note that the income calculation on Form B22A is used as a predictor of future income. Since

unemployment compensation is intended as a temporary, partial replacement for wages that would have been earned, "including those benefits in the CMI calculation is consistent with the predictive purpose of the provision," *In re Kucharz*, 418 B.R. at 642, and is certainly more reflective of what future wages may be than if the unemployment compensation were excluded from the calculation.[5]

Based on the foregoing analysis, the Court finds that the unemployment compensation paid to debtor, Craig Winkles, by the State of Illinois did not constitute a benefit "received under the Social Security Act," but was instead a benefit paid by the State of Illinois under its unemployment compensation law. The Court further finds that before it can rule on the Trustee's motion to dismiss, debtors should be given an opportunity to file an amended Form B22A to include that compensation in calculating their current monthly income. After the amended Form is filed, the United States Trustee shall supplement, amend or withdraw its motion to dismiss.

SEE ORDER ENTERED THIS DATE.

ENTERED: July 6, 2010

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE

---

[5] In addition, the purpose of completing Form B22A is to compare the debtors' current monthly income with the state median family income. Under the Bankruptcy Code, the term "median family income" is defined, in part, as "the median family income both calculated and reported by the Bureau of the Census in the then most recent year." 11 U.S.C. § 101(39A)(A). Unemployment benefits and social security benefits are included by the United States Bureau of the Census in collecting income data. *See*, *e.g.*, U.S. Department of Commerce Bureau of the Census Form D-2. To exclude both social security benefits and unemployment benefits on Form B22A would skew any relevant comparison of the amounts on B22A with the applicable median income. Excluding only social security benefits, however, satisfies the concerns of Senators Kennedy and Representative Conyers without substantially distorting the comparison.